**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CERTAINTEED CORPORATION,**

    **Plaintiff,**

**-vs-**          **Case No. 6:08-cv-1827-Orl-28DAB**

**STEPHEN DAVIS,**

    **Defendant.**

_____

## ORDER

This cause is before the Court on the motion to dismiss (Doc. 22) filed by CertainTeed Corporation ("CertainTeed"). CertainTeed seeks to dismiss the counterclaims asserted by Stephen Davis ("Davis") in his Answer (Doc. 18) to CertainTeed's Complaint (Doc. 1). In addition to counterclaims against CertainTeed, Davis includes claims against Daniel Crick ("Crick"), Robert Rumor ("Rumor"), Thomas Smith ("Smith"), and Megan Emory ("Emory") (collectively "the Individual Counterclaim Defendants"). The Individual Counterclaim Defendants have also filed a motion to dismiss (Doc. 37). Davis has filed responses thereto (Docs. 30 & 42), and the matter is now ripe for adjudication.

<u>I. Motion to Dismiss Standard</u>

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Ashcroft v. Iqbal</u>, 129

S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## II. Procedural History

On October 23, 2008, CertainTeed, a Delaware corporation with its principal place of business in Pennsylvania, filed a two-count Complaint (Doc. 1) against Davis alleging breach of contract and misappropriation of trade secrets. According to the Complaint, Davis breached an employment agreement and the restrictive covenants contained therein when he began working for an alleged competitor within weeks after resigning from his employment with CertainTeed. Davis filed an Answer (Doc. 18) asserting fifteen affirmative defenses and five counterclaims against CertainTeed, Crick, Rumor, Smith, and Emory. Davis's counterclaims include a claim for tortious interference with a business relationship (Count I) against CertainTeed, Crick, Rumor, and Smith; a claim for negligent supervision (Count II) against CertainTeed, Rumor, and Smith; a claim for negligent retention (Count III) against CertainTeed, Rumor, Smith, and Emory; a claim for intentional infliction of emotional distress (Count IV) against CertainTeed, Crick, Rumor, and Smith; and a breach of implied covenant of good faith and fair dealing (Count V) against CertainTeed. (Doc. 18).

### III.  Facts[1]

CertainTeed hired Davis in July 2005 to serve as CertainTeed's Territory Manager for Florida.  (Counterclaim ¶ 2).  CertainTeed employed Davis to sell its siding products to specified distributors in Florida and parts of Georgia.  (Id. ¶ 13).  After his hiring, Davis traveled to CertainTeed's corporate headquarters for an employment orientation.  During the employment orientation, CertainTeed presented Davis with an Employment Agreement that included a noncompete provision and asked Davis to sign the agreement "on the spot" without the benefit of having an attorney review the Employment Agreement.[2]  (Id. ¶¶ 8-10). Davis signed the Employment Agreement, but now avers that he signed only because his employment would be terminated had he refused.  (Id. ¶ 11).

In his counterclaim, Davis contends that he was constructively discharged as a result of the actions of Crick, CertainTeed's Regional Manager to whom Davis reported.  (Id. ¶¶ 15, 41-44).  Davis alleges that in February 2008 Crick began to threaten and verbally abuse him, specifically with the threat of termination without justification.[3]  (Id. ¶ 22).  During a performance review in April 2008, Crick "disparaged every aspect of [Davis's] performance with [CertainTeed]" and informed Davis that he had a "gut feeling" that Davis was not

---

[1]The facts are taken from Davis's Answer and are assumed to be true for the purpose of deciding this motion under Federal Rule of Civil Procedure 12(b)(6).

[2]The Agreement provides that its terms are to be construed in accordance with the laws of the Commonwealth of Pennsylvania.  (Counterclaim ¶ 12).

[3]According to Davis, he exceeded his sales plan in 2007 and was exceeding his sales plan in 2008.  Additionally, Davis was not tardy with reports, had no customer complaints, and no other employees of CertainTeed other than Crick questioned his job performance. (Counterclaim ¶ 23).

working hard. (Id. ¶¶ 26-27). Crick then stated, "I have to decide whether to terminate you or put you on a performance plan." Crick decided to place Davis on a performance plan, despite Davis having already exceeded his sales plan for the year and was a self-described "excellent employee." (Id. ¶¶ 29-30). Crick proceeded to give a performance evaluation indicating that Davis needed improvement in many areas, an evaluation with which Davis did not agree. (Id. ¶ 31-32).

As a result of Crick's alleged abusive and threatening behavior, Davis began suffering from chest pains, anxiety attacks, and severe sleep deprivation. (Id. ¶ 33). Sometime between the April 2008 performance review and June 2008, Davis complained to Emory, CertainTeed's Human Resources Director, about Crick's behavior and the impacts it was having on him, and Emory responded that she could do nothing to assist Davis. (Id. ¶¶ 34-35). Davis informed Emory that if she really could do nothing to help him, he would have to seek other employment for health reasons. (Id. ¶ 36). Emory allegedly responded that "she understood that [Davis] needed to find a new job," something which Davis took as an indication that he should resign from CertainTeed. (Id. ¶ 37). Davis claims that Crick's abusive behavior continued to escalate, with Crick repeating his threats regarding Davis's impending termination.[4] (Id. ¶ 38-39).

Davis submitted his letter of resignation on July 12, 2008, providing two weeks' notice that his last day of employment would be July 25, 2008. (Id. ¶¶ 44-45). Davis states that

---

[4]Though Davis contends that Crick's abusive behavior escalated, he provides the Court with no allegations supporting this statement. Davis alleged that Crick threatened to have him fired prior to the conversation with Emory, the same threatening behavior that allegedly constituted the "escalated" abusive behavior after the conversation.

"he had no choice but to resign based on serious concern about his mental and physical health." (Id. ¶ 44). Davis was offered a position with Ply-Gem—a company that CertainTeed views as a competitor—during the same month in which he was forced to resign—a position which he later accepted. (Counterclaim ¶¶ 43-44). On August 5, 2008, CertainTeed sent a letter informing Davis that CertainTeed viewed his employment with Ply-Gem as a violation of the noncompete provision contained in the Employment Agreement signed by Davis and requested that Davis justify his employment with Ply-Gem. (Id. ¶¶ 60-61). On or about September 2, 2008, CertainTeed sent another letter threatening legal action, including the potential need to conduct discovery regarding Davis's employment and a possible injunction preventing his continued employment with Ply-Gem. CertainTeed later filed its Complaint initiating these proceedings, and Davis has countersued with the claims presently before the Court.

## IV. Analysis

### A. Tortious Interference with a Business Relationship (Count I)

Davis claims that CertainTeed, Crick, Rumor, and Smith knew that Davis was employed by Ply-Gem to sell Ply-Gem's products to a single distributor, ASI, and that this employment was Davis's sole source of income. (Id. ¶¶ 78-79). Allegedly, CertainTeed and these counterclaim defendants breached a legal duty to not interfere with Davis's business relationship when they "intentionally and maliciously" sought to have Davis terminated from his employment "without justification and with full knowledge that they had no grounds to do so." (Id. ¶¶ 80, 82-83). Davis avers that this was intentional and without justification because CertainTeed and the individual defendants knew that the Employment Agreement

-5-

was void and unenforceable as a matter of law and that Davis was not in violation of the Employment Agreement. (Id. ¶ 81).

CertainTeed and the counterclaim defendants argue that Count I should be dismissed because Davis has not alleged the elements necessary to state a claim for tortious interference. (Doc. 22 at 4; Doc. 37 at 5). A claim for tortious interference with a business relationship requires four elements: "' (1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" Ethan Allen, Inc. v. Georgetown Manor, Inc. 647 So. 2d 812, 814 (Fla. 1994) (quoting Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985)). Regarding the fourth element, Davis pleads that he has suffered "mental anguish, emotional distress, unnecessary expense, financial burden[,] and continued fear of termination from his current employment with Ply-Gem." (Counterclaim ¶ 85). Davis has, however, not alleged that there has been any breach of his relationship with his employer, Ply-Gem, as a result of any actions taken by CertainTeed or the counterclaim defendants. Without such an allegation, Davis's claim for tortious interference with a business relationship cannot stand.[5] A fear of a breach of a business relationship is insufficient.

---

[5]Davis relies on Sobi v. Fairfield Resorts, Inc., 846 So. 2d 1204 (Fla. 5th DCA 2003), in opposition to the motions to dismiss. Davis's reliance on Sobi, however, is misplaced. In Sobi, the plaintiff brought a claim for tortious interference with a business relationship after his employer had fired him in order to secure its voluntary dismissal from a suit seeking an injunction to prevent the plaintiff's continued employment with this employer. Here, Davis has included no allegation that he has been fired from Ply-Gem as a result of CertainTeed's action to enforce its Employment Agreement.

Accordingly, Count I is dismissed without prejudice.

### B. Intentional Infliction of Emotional Distress (Count IV)

Davis also presents a claim for intentional infliction of emotional distress ("IIED") against CertainTeed, Crick, Rumor, and Smith. For support of his claim, Crick reiterates his allegations that Crick unjustifiedly threatened him with termination, disparaged his personal character, condemned his work ethic, intentionally cast doubt on his ability to perform his job, made false and malicious allegations against him regarding his work performance and professionalism, and attempted to destroy his career by "recklessly provid[ing] fabricated performance information" about him. (Counterclaim ¶ 98). Additionally, Davis alleges that after he informed Emory of Crick's behavior, Crick "intentionally and maliciously increased his threats and abusive behavior . . . with specific intent to cause him further mental anguish, emotional distress[,] and in an effort to increase the physical symptoms" of which Davis complained. (Id. ¶ 99). According to Davis, Crick also "maliciously provided fabricated performance documentation . . . and other false information to persuade [CertainTeed], as a form [of] retaliation, to pursue an unsupported and groundless claim against [Davis] for [an] alleged breach of the noncompete provisions of an employment agreement." (Id. ¶ 100). Finally, Davis claims that CertainTeed has "continued to pursue false claims against [Davis] with the specific intention of depriving [him] of his livelihood and causing him additional unnecessary mental anguish and emotional pain and suffering and financial hardship." (Id. ¶ 101).

CertainTeed and the counterclaim defendants move to dismiss the claim for IIED, arguing that Davis has failed to allege conduct arising to the extreme level required to state

a claim for IIED. (Doc. 22 at 8; Doc. 37 at 9). To state a claim for IIED, a plaintiff must allege facts sufficient to find that the intentional conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985). However, "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Scheller v. Am. Med. Int'l, Inc., 502 So. 2d 1268, 1271 (Fla. 4th DCA 1987). Whether the alleged conduct meets this exacting standard is a legal question for the court to decide as a matter of law. Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993).

Davis fails to state any set of facts that could conceivably rise to the level of outrageousness necessary to establish a claim of IIED under Florida law. The type of workplace disagreements described by Davis are not so outrageous in character or extreme in degree as to be "utterly intolerable" in a civilized society. See Williams v. Worldwide Flight Servs. Inc., 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (supervisor's alleged conduct of calling African-American employee a "nigger" and "monkey" and constantly threatening employee with job termination for no apparent reason did not rise to the level of outrageousness sufficient to maintain claim of IIED); Legrande v. Emmanuel, 889 So. 2d 991, 994-95 (Fla. 3d DCA 2004) (false accusations branding clergyman a thief made in front of the clergyman's parishioners insufficient to state a claim for IIED); Lay v. Roux Labs., Inc., 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (allegations that defendant used humiliating language and racial epithets towards plaintiff, threatened plaintiff with loss of job, and conducted vicious verbal attacks against plaintiff insufficient to state claim for IIED). Additionally,

CertainTeed's filing of a lawsuit against Davis based on the terms of the Employment Agreement—whether or not the Employment Agreement is ultimately found to be valid, an issue that this Court does not address at this time—does not give rise to an actionable claim for IIED. See McCarson, 467 So. 2d at 279 (stating that an "'actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.'"(quoting Restatement (Second) of Torts § 46 (1965))). Neither Crick's nor CertainTeed's conduct as described in the Counterclaim gives rise to a claim for IIED, and thus, Count IV for IIED is dismissed without prejudice.

### C. Negligent Supervision (Count II) and Negligent Retention (Count III)

In Counts II and III, Davis brings claims of negligent supervision[6] and negligent retention[7] for a breach of the duty to prevent Crick's harmful conduct alleged in the underlying tort claims of [IIED] and tortious interference with a business relationship. CertainTeed and the counterclaim defendants move to dismiss these claims, arguing that Davis has failed to allege an underlying tort recognized under common law. (Doc. 22 at 6-7; Doc. 37 at 6-7). Because this Court has already dismissed the underlying claims for tortious interference with a business relationship and IIED, Davis's claims for negligent supervision and negligent retention cannot stand. See Williams, 877 So. 2d at 871 (affirming trial court's dismissal of negligent retention claim after the underlying tort of IIED had been dismissed).

---

[6]Davis brings his negligent supervision claim against CertainTeed, Rumor, and Smith.

[7]Davis bring his claim for negligent retention against CertainTeed, Rumor, Smith, and Emory.

Accordingly, Counts II and III are hereby dismissed without prejudice.

### D. Breach of Implied Covenant of Good Faith and Fair Dealing (Count V)

Though he contends that the Employment Agreement is invalid, Davis alleges that should the Court find it to be valid and enforceable, CertainTeed has breached it by attempting to enforce the noncompete provision in light of Davis's alleged constructive discharge. (Counterclaim ¶ 104). Under the terms of the Employment Agreement, the noncompete provision is unenforceable if Smith's employment was "terminated by [CertainTeed] without cause." (Id. ¶ 105). Davis contends that his constructive discharge equates to termination without cause, and therefore, CertainTeed's attempts to enforce the terms of the Employment Agreement in light of this termination without cause constitutes a breach of the covenant of good faith and fair dealing. (Id. ¶¶ 106, 109).

"Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract." Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999) (citing County of Brevard v. Miorelli Eng'g, Inc., 703 So. 2d 1049, 1050 (Fla. 1997). The Eleventh Circuit, interpreting Florida law, has stated that "no independent cause of action exists under Florida law for breach of the implied covenant of good faith and fair dealing." Id. at 1317. The Burger King court further concluded that a claim for breach of an implied covenant of good faith and fair dealing could not be maintained without the plaintiff first identifying an express contractual provision that had been breached. Id. at 1318.

In its motion to dismiss, CertainTeed argues that Davis has not identified any breach of an express provision of the Employment Agreement by CertainTeed. (Doc. 22 at 10). Davis, however, alleges in his Counterclaim that CertainTeed breached the express term of

the Employment Agreement which make the noncompete provisions unenforceable if the employee is "terminated by [CertainTeed] without cause." (Counterclaim ¶ 105). Accordingly, because Davis has alleged the breach of an express contractual provision, CertainTeed's request that this Court dismiss Count V of the Counterclaim is denied.

V. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. CertainTeed's Motion to Dismiss (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Counts I-IV and **DENIED** as to Count V. As alleged against CertainTeed, Counts I-IV of the Counterclaim are **DISMISSED WITHOUT PREJUDICE.**

2. The Individual Defendant's Motion to Dismiss (Doc. 37) is **GRANTED**. As alleged against the Individual Defendants, Counts I-IV of the Counterclaim are **DISMISSED WITHOUT PREJUDICE.**

3. Davis is granted leave to file an Amended Counterclaim on or before September 9, 2009.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 21st day of August, 2009.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party